CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Antonio Fernandez**, | **Case:** 2:19-cv-01077-GW-KS |
| Plaintiff, | **Plaintiff's Reply in Support of Motion for Partial Summary Judgment against Defendant County of Los Angeles as to Liability Only** |
| v. | |
| **County of Los Angeles**; and Does 1-10, Inclusive, | Date:  November 4, 2019<br>Time:  8:30 a.m.<br>Ctrm:  9D (9th Floor) |
| Defendant. | Hon. Judge George H. Wu |

Plaintiff  Antonio  Fernandez hereby submits his reply brief in support of his motion for partial summary judgment.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES............................................................. ii

I.    ARGUMENT ................................................................. 1

   A. The County's Request that the Rebuttal Report of Janis Kent be Disregarded has No Merit............................................. 1

   B. Defendant has Not Met the "Formidable" Burden of Establishing Mootness of Plaintiff's ADA Claim............................................. 1

      1) The Park Has Not Complied with the ADA for Decades and Does Not Comply Now...................................................... 2

      2) The County Has Not Complied with Applicable ADA Standards and Obligations for Alterations........................... 3

      3) The Opinions of the County's Expert Mr. Izor are Challengeable and Do Not Establish Mootness. ................. 5

         a. Picnic Table Seating ..................................................... 5

         b. Accessible Routes.......................................................... 6

         c. Water Access (For Fishing) ........................................... 8

         d. Stability Testing........................................................... 11

      4) Voluntary Compliance Does Not Obviate the Need for Injunctive Relief.............................................................. 12

      5) Plaintiff's Damages Clains are Unaffected by Post-Complaint Remedial Efforts ............................................. 15

II.   CONCLUSION ........................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Choate*, 469 U.S. 287 (1985) .............................................. 3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167 (2000)* ......................................................................... 12

*Houston v. 7-Eleven, Inc.*, 2014 WL 5488805 (M.D. Fla. 2014) ......... 14

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1983)..................... 14

*Johnson v. Tackett*, 272 F.Supp.3d 1198 (E.D. Cal. 2017).................... 12

*Loye v. Cnty. of Dakota*, 625 F.3d 494 (8th Cir.2010)............................ 3

*Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932 *(2003)* ............................................................................. 13

*Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831 (N.D. Cal. 2011) ........ 12

*Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329 (11th Cir.2005) *(per curiam)* ......................................................................... 14

*Santiago v. Miles*, 774 F.Supp. 775 (W.D.N.Y. 1991) .......................... 14

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ................. 14

*United States v. W.T. Grant*, 345 U.S. 629 (1953)................................. 14

*West v. Sec'y of Dep't of Transp.*, 206 F.3d 920 (9th Cir. 2000)........... 12

**Federal Regulations**

28 C.F.R. §35.105(a) ................................................................. 2

28 C.F.R. §35.133 ................................................................... 10

28 C.F.R. § 35.133(a) ............................................................... 12

28 C.F.R. § 35.150 ..................................................................... 8

28 C.F.R. §35.150(c) .................................................................. 2

28 C.F.R. §35.150(d)(1)............................................................. 2

**Other Authorities**

ADA Standards................................................................. 5, 6, 10

Architectural Barriers Act Standards ............................................. 7, 8, 9,

Guide to the ADA Standards, Chapter 3: Floor and Ground, "Common Questions" https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-3-floor-and-ground-surfaces ................... 10, 11

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

# I.   ARGUMENT

## A. The County's Request that the Rebuttal Report of Janis Kent be Disregarded has No Merit

Plaintiff filed a notice of errata with a corrected declaration from his expert Janis Kent on October 9, 2019. Doc. 38 and Doc. 38-1. The corrected declaration included an exhibit – Ms. Kent's rebuttal report – that had been authenticated is Ms. Kent's original declaration, but was previously, inadvertently, not attached. Doc. 38-2. The County makes much ado regarding this filing and seeks to exclude the rebuttal report as a result. However, exclusion is not warranted.

The rebuttal report was not cited, referred to or relied upon in Plaintiff's initial moving papers. So "excluding" it from consideration with that filing has no practical impact. Additionally, the County was timely served a copy of the rebuttal report on September 9, 2019.[1] Any claim of surprise or prejudice (a claim the County does not even try to make) would be disingenuous at best. The County has had the benefit of the rebuttal report for weeks. Finally, the rebuttal report is timely filed, and therefore appropriately cited and considered, for purposes of Plaintiff's reply.

## B. Defendant has Not Met the "Formidable" Burden of Establishing Mootness of Plaintiff's ADA Claim

In order to establish that Plaintiff's federal ADA claim has been rendered moot, Defendant must establish two things: (1) that the violation has been fixed; and (2) that the violation cannot be reasonably expected to recur. The undisputed facts reveal neither to be true.

---

[1] Ex. 11 (Supp. Decl. of Isabel Masanque) at ¶ 5.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

1

2   **1) The Park Has Not Complied with the ADA for Decades**

3   **and Does Not Comply Now.**

4   Department of Justice regulations implementing Title II required

5   public entities to, among other things: (1) conduct a self-evaluation of its

6   programs by January 26, 1993 (28 C.F.R. § 35.105(a)); (2) develop a

7   transition plan by no later than July 26, 1992 setting forth the steps

8   necessary to complete the structural changes required to achieve

9   program accessibility (28 C.F.R. § 35.150(d)(1)); and (3) remove the

10   physical barriers that limit or deny access to its programs by no later

11   than January 26, 1995 (28 C.F.R. § 35.150(c)).  The County failed to

12   comply with all of these requirements; evidence that they neither value

13   nor care about disability access.

14   The County admits that it did not conduct a self-evaluation of the

15   Park until 2000.[2]  The document the County produced as its "transition

16   plan" is dated nine years later, March 12, 2009, and confirms that the

17   barriers to the paths of travel, picnicking areas and access to the water at

18   the Park existed in 2000 and continued unabated in 2009.[3]

19   It is undisputed that Plaintiff encountered these exact same

20   barriers in June and August of 2018 and that Plaintiff's expert Janis Kent

21   confirmed the barriers on June 13, 2019 *(notably, months after the*

22   *County claims it remediated the barriers in response to Plaintiff's*

23   *litigation).*[4]  Further, Ms. Kent's rebuttal to Defendant's expert

24   establishes that the barriers continue to exist.[5]  *See* discussion in Section

25   3 below.

26   _____

27   [2] SSUF # 86.
     [3] SSUF # 87.

28   [4] SSUF # 12-32 and 41-78.
     [5] Plaintiff's Response to SSUF # 91.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

1    The County itself has confirmed the Park's inaccessibility at the
2    time of Plaintiff's visits and admitted its long-standing non-compliance
3    with its legal obligations pursuant to the ADA. In response to Plaintiff's
4    interrogatories, the County expressly admits that it does not contend that
5    Plaintiff was provided meaningful access to the Park.[6]

6

7    **2) The County Has Not Complied with Applicable ADA**
8    **Standards and Obligations for Alterations.**

9    It is undisputed that the Park, and specifically the public
10   walkways and picnic areas complained of by Plaintiff, were altered after
11   January 26, 1992.  The County has admitted that these areas of the Park
12   were altered in or about 2012-2013.[7]

13   It is also undisputed that the public walkways and picnicking areas
14   Plaintiff encountered were and are not readily accessible to and usable
15   by individuals with disabilities. Plaintiff has testified that the facilities
16   were not accessible to him at the time of his visits in 2018, in that the
17   ground surfaces were neither firm nor stable and consisted of loose dirt,
18   gravel and grass.[8]

19   Plaintiff's expert Janis Kent confirmed the inaccessibility of the
20   facilities encountered by Plaintiff during her June 13, 2019 site
21   inspection and concurrently noted other areas of non-compliance.[9]  This
22   non-compliance continues to exist.[10]

23

24   [6] SSUF # 88. Title II requires that disabled persons receive "meaningful access" to a
25   public entity's services, not merely "limited participation." *See Loye v. Cnty. of Dakota,* 625 F.3d 494, 496 (8th Cir.2010) (so stating, in reliance on *Alexander v.*
26   *Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)).
     [7] SSUF # 80.
27   [8] SSUF # 12-32.
     [9] SSUF # 41-78.
28   [10] Plaintiff's Response to SSUF #91.

1    The inaccessibility of the Park's facilities post-alteration is
2    unsurprising. The County concedes that it does not know what standards
3    or guidelines were used when the facilities of the Park were altered in
4    2012-2013.[11] It is not even apparent that access was a goal of the
5    alterations, despite the County's self-evaluation four years earlier (in
6    2008); a self-evaluation that expressly noted the paths of travel to be
7    inaccessible and non-compliant with the ADA due to surfaces that were
8    neither firm nor stable.[12]

9    After the 2012-2013 alterations, the City did not conduct another
10   self-evaluation or review of the Park's facilities until March 2019, *after*
11   Plaintiff's Complaint was filed.[13]  Defendant claims that the issues raised
12   in Plaintiff's Complaint are now "moot" in that remedial efforts were
13   completed in April 2019 as to the paths of travel, picnic areas and slopes
14   leading to the water.[14] However, as discussed in Plaintiff's Motion,
15   Plaintiff's expert Janis Kent conducted her noticed site inspection two
16   months after this alleged remediation, and confirmed the barriers
17   contained in Plaintiff's Complaint still existed.[15] Defendant's expert
18   claims to have "observed evidence" of maintenance work at the Park[16],
19   but no additional examinations have been conducted at the Park since
20   Ms. Kent's inspection, such that there is insufficient evidence to claim
21   compliance, much less mootness. And once again, Ms. Kent's rebuttal to
22   Defendant's expert establishes that the barriers continue to exist.  *See*
23   discussion in Section 3 below.

24

25   [11] SSUF # 82.
26   [12] SSUF # 87.
     [13] SSUF # 83.
27   [14] SSUF #91.
28   [15] Doc. 37-1 (Motion) at pp. 5-9.
     [16] Def's SUF # 32, 34.

4

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

### 3) The Opinions of the County's Expert Mr. Izor are Challengeable and Do Not Establish Mootness.

The findings contained in the report of Defendant's expert Mr. Izor are challengeable and/or objectionable and not a sufficient basis upon which to find Plaintiff's ADA claims moot. The issues with Mr. Izor's report are set out in the expert rebuttal report prepared by Plaintiff's expert Janis Kent and summarized herein.[17]

### a) Picnic Table Seating

Mr. Izor wrongly relies on the Federal Architectural Barriers Act when evaluating picnic table seating. This is an area in which the ADA Standards provide adequate guidance. The Architectural Barriers Act applies to facilities designed, built, altered, or leased with certain federal funds, and are generally not applicable to a County Park. Although these federal standards may provide some guidance for a nonfederal entity or facility where the ADA standards provide no direct mention of how to scope nor technical requirements, this is not the case here when it comes to standards for seating.

The ADA does not differentiate picnic tables from other types of tables.[18] Accordingly, the scoping standards for tables in general apply.[19] Section 226 of the 2010 ADA Standards for Accessible Design (ADA Standards) refers to dining and work surfaces. That section provides that 5% of "seating spaces" are to comply with accessibility

---

[17] Plaintiff's Response to SSUF # 91.
[18] Id.
[19] Id.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

requirements and further, per Section 226.2, that they are to be dispersed thru-out the facility.

> *226.1 General. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902...*
>
> *226.2 Dispersion. Dining surfaces and work surfaces required to comply with 902 shall be dispersed throughout the space or facility containing dining surfaces and work surfaces.*

The 22 standard picnic tables at the Park are able to seat 8 persons, resulting in a total of 176 seating spaces.[20] To ensure that 5 percent of the total seating spaces are accessible per ADA, 9 tables are required to be accessible and dispersed around the overall facility.[21] Note, this is not inclusive of seating spaces at the ends of the picnic tables, so in Ms. Kent's opinion 9 tables would be a *minimum*.[22] If you count the ends of the tables then it would increase to 11 tables.[23]

In light of these requirements, the 6 tables Defendant reports to be "accessible" at the Park currently does not comply with the ADA.

### b) Accessible Routes

Ms. Kent strongly disagrees with Mr. Izor's assertion that there was or is "compliant access thru-out the majority of the [Park] facility." She details in her Expert Report and Rebuttal Report, how a good portion of the outdoor recreation routes were not paved and how the

---

[20] Id.
[21] Id.
[22] Id.
[23] Id.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

1    gravel surface was neither firm nor stable.[24] Many areas had a dirt route
2    with footprints visible (demonstrating the lack of a firm and stable
3    surface).[25]

4          With regard specifically to the path of travel at the northwestern-
5    most area of the Park that transitions from a paved walkway to dirt, Mr.
6    Izor cites the Architectural Barriers Act regulations as applicable to trails
7    (1017.7.1). Assuming it is appropriate to look to the Architectural
8    Barriers Act for scoping guidance as to this particular aspect of the
9    Park's facilities (due to a lack of directly corresponding ADA
10   Standards), the existing conditions violate Architectural Barriers Act
11   regulations even using Mr. Izor's reported measurements (which vary
12   from 5.1 to 6.6 percent), and certainly when one considers the measures
13   obtained by Ms. Kent (up to 9% for a length of approximately 35 linear
14   feet which exceeds the length allowed for slopes between 8.33% to
15   10%).[26] The dirt surface is not firm or stable as required by 1017.2 of the
16   Architectural Barriers Act standards, and the area lacks a level top and
17   bottom surface (resting intervals) despite having slopes exceeding 5% as
18   required by 1017.7.1 and 1017. 8.

19         Additionally, Ms. Kent opines that she would not have looked for
20   equivalent guidance under the Architectural Barriers Act for Trails for
21   this particular path of travel, since it does not connect to a trailhead or
22   another trail as defined by that Act.[27]

24         *F247.1 General. Where a trail is designed for use by hikers or*
25         *pedestrians and directly connects to a trailhead or another trail*

---

[24] SSUF # 41-78; Plaintiff's Response to SSUF # 91.
[25] Id.
[26] Plaintiff's Response to SSUF # 91.
[27] Id.

1

2

*that substantially meets the requirements in 1017, the trail shall comply with 1017.*

3

4

5

*Trail. A pedestrian route developed primarily for outdoor recreational purposes. A pedestrian route developed primarily to connect elements, spaces, or facilities within a site is not a trail.*

6

7

8

9

*Trailhead. An outdoor space that is designated by an entity responsible for administering or maintaining a trail to serve as an access point to the trail. The junction of two or more trails or the undeveloped junction of a trail and a road is not a trailhead.*

10

11

12

13

14

15

16

17

Rather, she would have looked to the Outdoor Recreation Access Route ("ORAR") guidance (1016).[28] Notably, using the ORAR standards would not change Ms. Kent's opinion that the path of travel is inaccessible.[29] The same violations exist under the ORAR provisions as in the Trail provisions.[30] The ORAR provisions, like the Trail provisions, also require a firm and stable surface (Architectural Barriers Act 1016.2) and resting intervals (Architectural Barriers Act 1016.7.1 and 1016.8).[31] The path of travel has neither.[32]

18

19

**c)  Water Access (For Fishing)**

20

21

22

23

24

With regard to access to the water's edge – for fishing and observing wildlife, the ADA's general requirements around accessibility and usability (28 C.F.R. 35.150) apply, but the ADA Standards do not include scoping or technical standards specifically dealing with access to the edge of a body of water.[33] As such, looking to the Architectural

25

26

27

28

[28] Id.

[29] Id.

[30] Id.

[31] Id.

[32] Id.

[33] Id.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

Barriers Act Standards for guidance - and specifically the provisions related to Outdoor Recreation Access Routes - would be appropriate.[34]

> *F206.2.2 Within a Site. At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.*
>
> *F245.4 Outdoor Recreation Access Routes. Picnic facilities shall provide outdoor recreation access routes complying with 1016 in accordance with F245.4.*
>
> *F245.4.2 Routes to and Within Common Use and Public Use Areas. Common use and public use areas serving picnic units with mobility features shall provide outdoor recreation access routes in accordance with F245.4.2.*
>
> *F245.4.2.1 Routes to Common Use and Public Use Areas. At least one outdoor recreation access route shall connect each picnic unit with mobility features with common use and public use areas serving that unit.*
>
> *F245.4.2.2 Routes Within Common Use and Public Use Areas. At least one outdoor recreation access route shall connect accessible elements, spaces, and facilities provided within common use and public use areas serving picnic units with mobility features.*
>
> *F245.4.3 Routes to Adjacent Recreation Facilities. Where a circulation path connects picnic facilities and adjacent recreation facilities, at least one outdoor recreation access route shall connect picnic units with mobility features to an accessible route serving the adjacent recreation facilities.*

In the expert opinion of Ms. Kent, the Park does not meet these standards. There should be at least one area designated for persons with

---

[34] Id.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

1    disabilities to access the water's edge and that area should be maintained

2    as accessible.[35] 28 C.F.R. 35.133. Changing water levels are not a

3    barrier to achieving compliance; as the water lowers there are products

4    that can be placed on it to make it stable – such as a Mobi Mat.[36]

5

6    ### d) Stability Testing

7    The ADA Standards provides in section 302.1 that "Floor and

8    ground surfaces shall be stable, firm, and slip resistant...." The Advisory

9    to this section defines "stable," "firm" and "slip-resistant" as follows:

10

11       *A stable surface is one that remains unchanged by contaminants*
         *or applied force, so that when the contaminant or force is*
12       *removed, the surface returns to its original condition.*

13
         *A firm surface resists deformation by either indentations or*
14       *particles moving on its surface.*

15
         *A slip-resistant surface provides sufficient frictional counterforce*
16       *to the forces exerted in walking to permit safe ambulation.*

17

18       The Guidelines published by the United States Access Board

19   confirm that "loose materials, like gravel, will not perform adequately

20   unless it is sufficiently stabilized by binders, compaction, or other

21   treatments and will likely require repeated maintenance." See Guide to

22   the ADA Standards, Chapter 3: Floor and Ground, "Common Questions"

23   https://www.access-board.gov/guidelines-and-standards/buildings-and-

24

25   ────────────────────

26   [35] Id.

27   [36] Id.  Mobi-Mat is a lightweight portable rollout non-slip matting that is temporarily
     or permanently laid down on the ground to provide non-slip and traffic resistant
28   access for all (wheelchairs, strollers, pedestrians) on sand, grass, or other soft and
     unstable surfaces.  https://www.mobi-mat-chair-beach-access-dms.com

─────────────────────────────────────

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

1  sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-3-
2  floor-and-ground-surfaces (visited October 9, 2019)

3      In an "updated [expert] report" produced one business day before
4  rebuttal reports were due, Mr. Izor incorporated testing conducted by a
5  third party and undisclosed expert from Beneficial Designs.[37] The
6  testing report from Beneficial Designs is incomplete, inaccurate and
7  misleading.

8      Ms. Kent disagrees with the report, in that it concludes that "all
9  locations [in the Park] are firm and stable." As an initial matter, the
10  report notes the "test surfaces" it assessed to be "compacted decomposed
11  gravel", when in reality – and as confirmed by the photos attached to the
12  Beneficial Designs' report as well as the photos attached to Ms. Kent's
13  June 30, 2019 report - the surfaces and paths of travel around the Park
14  consist largely of loose gravel and dirt.[38] Moreover, Beneficial Designs
15  did not test all surfaces at the Park, and did not test the areas specifically
16  complained of in Plaintiff's Complaint.[39]

17      Additionally, the photos from Beneficial Designs show the paths
18  of travel on the date tested to have displaced sand and gravel, which by
19  definition are not "firm or stable" surfaces[40], calling into question the
20  veracity of both the tester and the testing. Finally, the Rotational
21  Penetrometer measures firmness and stability, but not slip resistance.
22  The surfaces at the Park cannot be concluded to be slip-resistant based
23  on any Rotational Penetrometer testing.

24
25
26
27
28

---

[37] Plaintiff's Response to SSUF # 91.
[38] Id.
[39] Id.
[40] Id.

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

1
2

**4) Voluntary Compliance Does Not Obviate the Need for Injunctive Relief.**

3    The central question in determining whether an ADA claim is
4    moot is whether changes in circumstances since the complaint filing has
5    "forestalled any meaningful relief." *Moeller v. Taco Bell Corp*., 816
6    F.Supp.2d 831, 860 (N.D. Cal. 2011) (citing *West v. Sec'y of Dep't of*
7    *Transp*., 206 F.3d 920, 925 (9th Cir. 2000) ). "[W]hen a defendant's
8    voluntary cessation of a challenged activity is the basis for mootness, it
9    is the defendant's burden to show 'subsequent events made it absolutely
10   clear that the allegedly wrongful behavior could not reasonably be
11   expected to recur.' " *Johnson v. Tackett*, 272 F.Supp.3d 1198 (E.D. Cal.
12   2017) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*
13   *Inc.*, 528 U.S. 167, 189 (2000) ). There is a "heavy burden" on the
14   defendant to persuade the court that, because of their remedial efforts,
15   the challenged conduct cannot be reasonably expected to recur. *Id.* In
16   determining whether a violation can reasonably be expected to recur, the
17   Court considers factors including whether the defendant has spent
18   considerable sums of money altering the property to comply with the
19   ADA, as well as the defendant's history of compliance. *See Id.* at 1203–
20   04. As discussed below, Defendant has not met the "heavy burden" to
21   show that their challenged conduct will not recur.

22   As an initial matter, Defendant's reported remedial efforts consist
23   of things like the striping of a parking space, adjustment of water flow
24   on a water fountain and the maintenance of surfaces. These efforts are
25   neither structural nor permanent; the barriers alleged by Plaintiff are
26   therefore likely to reoccur without an order of injunctive relief.

27   Additionally, Defendants have not presented any evidence of a
28   plan or intent to maintain accessible features. *See* 28 C.F.R. § 35.133(a)

1    (requiring that a public entity "maintain in operable working condition
2    those features of facilities and equipment that are required to be readily
3    accessible to and usable by persons with disabilities.") The County has
4    no policies or procedures for the regular maintenance of the accessibility
5    features of the Park. No such policies were exchanged via disclosures or
6    produced in response to document requests, and no such policies were
7    identified or described in Defendant's interrogatory responses.[41] Further,
8    no evidence of regularly scheduled ADA maintenance was reflected in
9    documents exchanged via disclosures or produced in response to
10   document requests, and no such work was identified or described in
11   Defendant's interrogatory responses.[42]

12        The fact that Defendants undertook some remedial efforts *(and*
13   *notably, only after being sued)* does not mean that they will maintain
14   those efforts absent an order of injunctive relief. In fact, Defendant's
15   long history non-compliance with accessibility requirements makes it
16   more likely than not that it will allow its facilities to deteriorate once the
17   smoke clears from this case. This non-compliance was intentional, not
18   accidental. *See Modern Dev. Co. v. Navigators Ins. Co.,* 111 Cal. App.
19   4th 932, 941 (2003)(the physical conditions of a business, including its
20   "architectural barriers" are "the result of day-to-day managerial
21   decisions, actions or omissions to act," "not an accident" and
22   "intended").

23        Finally, Plaintiff has alleged that Defendant failed to provide him
24   with reasonable modifications for his disability.[43] Defendant has not
25   addressed their failure to properly process Plaintiff's request, particularly

26

27   _____
     [41] SSUF # 84.
28   [42] SSUF # 85.
     [43] SSUF # 36-38.

1    when the County does not dispute that there were barriers at the Park
2    that denied Plaintiff meaningful access.  "Meaningful [injunctive] relief"
3    in this case may include alteration of the County's disability complaint
4    and reasonable modification policies and procedures to ensure that no
5    viable future requests are ignored like Plaintiff's.

6         Under circumstances similar to those recited above, courts have
7    been advised to be skeptical of mootness claims. "It is the duty of the
8    courts to beware of efforts to defeat injunctive relief by protestations of
9    repentance and reform, especially when abandonment seems timed to
10   anticipate suit, and there is a probability of resumption." *Santiago v.*
11   *Miles*, 774 F.Supp. 775, 793 (W.D.N.Y. 1991), quoting, *United States v.*
12   *W.T. Grant*, 345 U.S. 629, 632 (1953) "[S]uch actions in the face of
13   litigation are equivocal in purpose, motive, and permanence." *Steel Co.*
14   *v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("presumption" of
15   future injury when cessation occurs in response to suit); *Iron Arrow*
16   *Honor Soc'y v. Heckler*, 464 U.S. 67, 71-72 (1983); *Nat'l Adver. Co. v.*
17   *City of Miami*, 402 F.3d 1329, 1333 (11th Cir.2005) (per curiam)
18   ("[V]oluntary cessation of offensive conduct will only moot litigation if
19   it is clear that the defendant has not changed course simply to deprive
20   the court of jurisdiction."); *Houston v. 7-Eleven, Inc*., 2014 WL
21   5488805, at *12 (M.D. Fla. 2014) ("The heavy burden of persuading the
22   Court that the challenged conduct cannot reasonably be expected to start
23   up again lies with the party asserting mootness. The Court recognizes
24   that [d]efendant has expended substantial efforts to bring the stores into
25   compliance; however, the allegations of a pattern and practice of
26   noncompliance cloud the issue.")  Pursuant to the facts and authority set
27   forth herein, this Court should also be skeptical.

28

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS

**5) Plaintiff's Damages Claims are Unaffected by Post-Complaint Remedial Efforts**

The County appears to argue in both its opposition to Plaintiff's motion and its own summary judgment motion that its remedial efforts moot Plaintiff's claims in their entirety. Not possible. Even assuming *arguendo* that the County's alleged remedial efforts did cure the barriers alleged in Plaintiff's Complaint, that fact is only relevant with regard to Plaintiff's claims for injunctive relief. Plaintiff's claims for damages, under both Title II of the ADA and the Disabled Persons Act are not impacted by the County's post-Complaint efforts.

## I.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion and (1) find the County liable for violating the provisions of Title II of the ADA; (2) find the County liable for violating the CDPA; and (3) issue an injunction pursuant to the ADA requiring the County to remediate its facilities and modify its policies so that Plaintiff and other similarly situated persons with disabilities have meaningful access to and use of the Park moving forward.

Plaintiff also respectfully requests that his claim for damages under the ADA and CDPA be reserved for trial.

Dated: October 21, 2019          CENTER FOR DISABILITY ACCESS

By:  /s/ Isabel Rose Masanque
          Isabel Rose Masanque
          Attorneys for Plaintiff

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
Case: 2:19-cv-01077-GW-KS